O'CEDAR CORPORATION v. F. W. WOOLWORTH CO. et al.

No. 4816.

Circuit Court of Appeals, Seventh Circuit.
July 26, 1933.

Rehearing Denied Oct. 4, 1933.

George L. Wilkinson, Joseph B. Lawler, and Milton T. Miller, all of Chicago, Ill., for appellant.

Ednyfed H. Williams and William A. Lankton, both of Chicago, Ill., for appellee F. W. Woolworth Co.

Henry B. Floyd, of Chicago, Ill., for appellee Midway Chemical Co.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

EVANS, Circuit Judge.

This appeal is from an order dismissing, after trial, the complaint of appellant which sought an injunction against use by appellees of labels alleged to infringe appellant's trade-marks and also to prevent certain alleged unfair trade practices and for damages because of such practices, and for an account-ing of profits arising out of the infringement of the trade-marks.

Appellant's registered trade-marks were "O-Cedar" and "Cedarine." "O-Cedar" was registered in the Patent Office August 18, 1914, for floor polish, and as to brooms and brushes, on July 2, 1912. It was registered in Illinois, January 15, 1914. Appellant's trade-mark "Cedarine" was registered in the Patent Office, June 7, 1887; reregistered on August 22, 1905; and again registered in the Patent Office on February 19, 1924. Appellant, on February 7, 1908, acquired from the owner of the trade-mark "O-Cedar" the right to use the name which had become established in trade, and, at the same time, the good will of the owner.

Appellant charged that appellee, Midway Chemical Company, infringed the trade-marks "O-Cedar" and "Cedarine" by marketing its product under the name "Radiant Cedar Oil Polish" and other phrases of which the words "cedar" and "oil" form a component part and have simulated labels and containers for the purpose of deceiving the public into believing that they are O-Cedar products. Midway's product was sold in stores operated by appellee Woolworth Company.

Appellant expended over five million dollars advertising the trade-marks "O-Cedar" and "Cedarine." It contends that as a result of its extensive campaign of advertising and the wide sale of its polish, the public has identified its polish with the word "cedar." Neither oil of cedar leaf nor of cedar wood are of utility in polishes. Less than two per cent. of the polish is cedar oil, and its use is limited to imparting an odor or perfume to the product and destroying the otherwise objectionable odor of the polish.

Woolworth Company denies unfair competition by the sale of an article bearing labels allegedly infringing upon trade-marks "O-Cedar" and "Cedarine," and asserts the right to use the term "cedar" upon its labels when it is used in polish. It asserts that cedar oil when used in polish has valuable qualities. It also claims that appellant entered the court with unclean hands in that it has deceived the public into believing that a substantial part of the contents of its polish is cedar oil, whereas it only contains from one to two per cent. of this ingredient.

Appellee, Midway Chemical Company, also denies infringement of the appellant's trade-marks, as well as all the other material allegations of the complaint.

Some years prior to this suit, a distributor of appellant's goods was sued by the Cedarine

Company and lost the suit. Allen v. Walker & Gibson (D. C.) 235 F. 230. Appellant thereupon acquired by purchase from Cedarine Company the trade-mark "Cedarine."

On December 9, 1925, a consent decree was entered in a suit between the Channel Chemical Company (now O-Cedar Company, appellant), plaintiff, and F. W. Woolworth Company and the Visco Chemical Company, defendants, wherein it was stipulated that the following labels might be used:

Material portions of the decree read as follows:

"In consideration of the foregoing, it is by consent hereby Ordered, Adjudged and Decreed, that:

"First: The plaintiff is the owner of the Trade Mark 'O-Cedar' for furniture and similar polishes, and of the Certificate of Registration thereof, No. 99,142, dated August 18, 1914, both of which are good and valid in law.

The consent decree prohibited the use of the following labels because they infringed the trade-marks and constituted unfair competition:

"Second: The present label of defendants (Exhibit B, attached to the Bill of Complaint herein) infringes plaintiff's said trade mark and constitutes unfair competition in trade.

"Third: The modified label of the defendant The Visco Chemical Products Company attached hereto does not infringe the plaintiff's trade mark and does not constitute unfair competition in trade.

"Fourth: The defendants and all customers of the defendant The Visco Chemical Products Company are enjoined from the use of the present label of The Visco Chemical Products Company, from and after six (6) months from the date hereof.

"Fifth: The matter of an accounting of profits and damages having been adjusted, the defendants are released from the same.

"Sixth: Each party shall pay its own costs."

The District Court found for appellees on all the controverted issues.

Four questions are presented on the appeal: (a) The validity of the trade-marks; (b) the infringements of the said trade-marks by the use of the words "cedar oil varnish," etc.; (c) the effect of the decree entered in the suit brought by appellant against F. W. Woolworth Co. et al.; and (d) the alleged unfair trade practices.

■ (a) Without extended discussion or giving lengthy reasons for reaching our conclusion, we will merely say that we accept as correct the holding of the court in Allen v. Walker & Gibson (D. C.) 235 F. 230. In other words, both trade-marks are valid.

■■ (b) As to infringement, our conclusion is that Cedar Oil Polish and Radiant Cedar Oil Polish are not, under the circumstances disclosed by the evidence in this case, infringements of the trade-marks "O-Cedar" and "Cedarine." A recognition of the validity of the trade-marks does not give appellant a monopoly of the word "cedar." Appellant cannot stress the prefix syllable "O" or the suffix syllable "ine" in order to secure a recognition of the validity of its trade-marks and then ignore them and their limiting effect when approaching the issue of infringement.

■ (c) The decree in the suit brought by appellant against appellee Woolworth Company disposed of certain questions as to them with finality. The issues thus litigated are as between the parties not subject to review or modification through new and different litigation. Warner v. Tennessee Products Corp.,

57 F.(2d) 642 (C. C. A. 6); Roberts Cone Mfg. Co. v. Bruckman, 266 F. 986 (C. C. A. 8); Wilson v. Haber Bros., 275 F. 346 (C. C. A. 2); Snell v. J. C. Turner Lumber Co., 285 F. 356 (C. C. A. 2); Utah Power & Light Co. v. United States, 42 F.(2d) 304 (Ct. Cl.); Warford Corp. v. Bryan Screw Mach. Products Co., 44 F.(2d) 713 (C. C. A. 6); Wooster v. Thornton (C. C.) 26 F. 274; Thompson v. Maxwell Land Grant & R. Co., 95 U. S. 391, 24 L. Ed. 481; Woods Bros. Const. Co. v. Yankton County (C. C. A. 8) 54 F.(2d) 304, 81 A. L. R. 300; Ruling Case Law, "Judgments," § 90; Freeman on Judgments (1925 Ed.) §§ 663, 664, 1350; Walker on Patents, § 518.

Two of the issues thus settled were the validity of the trade-marks "O-Cedar" and "Cedarine" and their infringement by Woolworth. Likewise it was settled that certain practices indulged in by Woolworth were unfair and their continuance enjoined. Equally clear, we think, was it settled that Woolworth might not use the words "cedar oil" as modifying the word "polish."

The scope of a decree of this character embodying an agreement of the parties is generally involved in some doubt, because of lack of identity of the descriptive words used. Generally speaking, it may be said that as between parties sui juris and in the absence of fraud, a decree of a court having jurisdiction of the subject matter rendered by consent of the parties, though without any ascertainment by the court of the truth of the facts averred, is as binding and conclusive between the parties and their privies as if the suit had been an adversary one. So construing the decree in the previous litigation between appellant and appellee Woolworth, we cannot escape the conclusion that the court found the use of the words "cedar oil" as modifying "polish" to be an infringement of plaintiff's trade-marks and also that they constituted unfair trade practices. From the position by it taken and the decree entered thereon, appellee Woolworth Company cannot now withdraw.

■ In determining whether appellees were guilty of unfair methods of trade in manufacturing and marketing polish under the name of "Radiant Cedar Oil Polish," it becomes necessary to go further than to ascertain whether the trade names have been infringed. For words used to describe a competitor's product may not infringe a trade-mark and yet may constitute unfair methods of trade. Whether appellees stepped outside of the legitimate methods of competition ne-

cessitates an examination of the evidence, and judicial precedents are of little help.

██ That appellant acquired no exclusive right to use the words "cedar" or "cedar oil" as applied to polish must be readily conceded. Equally clear was appellees' right to impart to its polish a desirable odor. In other words, both manufacturers were free to use cedar oil either as a material ingredient in the polish or to perfume the same. Nevertheless, appellees' right to use the *words* "cedar oil" must be recognized as somewhat limited in the light of competitor's existing business. Ignoring for the moment the trade-marks "O-Cedar" and "Cedarine" and viewing this case merely as one of unfair competition to be approached as all unfair competition cases must be, we find that the substance of the charge is directed to the alleged effort of appellees to secure appellant's trade by deceiving the public into the belief that appellees' products were in fact appellant's products.

All rights, personal as well as commercial, are more or less relative. They are all, under certain circumstances and conditions, subject to limitations. Appellees' right to use the words "cedar oil" and to use the word "cedar" in describing its polish is, for example, subject to the limitation that the word "cedar" should not be printed upon labels in such form as to deceive the users into the belief that it was appellant's product which they were buying. This is not a limitation upon the use of the word "cedar" as such. It is a limitation upon appellees' right to sell their goods by means which naturally deceive the purchaser into the belief that he is buying appellant's goods.

██ The evidence in the case indicates that *customers were in the habit of calling for appellant's product under the names of "O-Cedar Polish," "Cedar Polish," "O-Cedar Oil," "Cedar Oil," "Cedar Oil Polish," and "Oil of Cedar Polish."*

Cedar oil as such is an inconsequential ingredient in a polish. It serves no useful purpose in the polish. Assuming as we do that appellees were within their rights in adopting the same odor for the same purpose, the evidence shows they went further. They chose to give to the name of their product that which would suggest "O-Cedar" and "Cedarine," the trade-marks of appellant, when, as a matter of fact, it was not distinctive or an essential part of the product they were marketing. They cannot with sincerity and candor assert that their polish was a cedar oil polish. Not being so, why did they adopt this name? To say it was fancy or chance is hardly plausible. To accept the contention that they had no thought of invading appellant's well established and widely advertised business requires us to overtax our credulity.

This conclusion is confirmed by the action of Woolworth in repudiating its agreement and in violating the decree of the court entered upon its consent. It is difficult to attribute any reason for Woolworth's action other than that a profitable business was derived only through the use of a sales dress and display which made possible the sale of polish to a public which believed it was purchasing appellant's product. The evidence amply sustains a finding of confusion resulting from appellees' practices and that consumers mistakenly purchased polish which they believed to be appellant's make.

██ Little need be said respecting the contention that appellant entered court with unclean hands. Its trade-marks and tradenames were applied to mops, dusters, sprays, auto polish, etc., as well as to furniture polish. When it entered the field cedar was either not used at all or only to a very limited extent to perfume polish. Its label avoids any suggestion that cedar oil is a substantial ingredient of its polish.

The decree is reversed, with directions to proceed further in accordance with this opinion.